UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK L. BARELA, Jr.,                              Case No. 20-12319

                          Plaintiff,              Thomas L. Ludington
v.                                                 United States District Judge

COMMISSIONER OF SOCIAL                             Curtis Ivy, Jr.
SECURITY,                                          United States Magistrate Judge

                          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 13, 16)**

Plaintiff Frank Barela brings this action pursuant to 42 U.S.C. § 405(g),

challenging the final decision of Defendant Commissioner of Social Security

("Commissioner") denying his applications for Supplemental Security Income

under the Social Security Act. This matter is before the United States Magistrate

Judge for a Report and Recommendation on Plaintiff's motion for summary

judgment (ECF No. 13), the Commissioner's cross-motion for summary judgment

(ECF No. 16), Plaintiff's reply (ECF No. 17) and the administrative record (ECF

No. 10).

For the reasons below, it is **RECOMMENDED** that Plaintiff's Motion for

Summary Judgment (ECF No. 13) be **GRANTED** to the extent that Plaintiff

requests remand, that the Commissioner's Motion for Summary Judgment (ECF

No. 16) be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the

decision of the Commissioner be **REMANDED**.

I.     **DISCUSSION**

   A.     **Background and Administrative History**

   Plaintiff alleges his disability began on January 1, 2005, at the age of 33.

(ECF No. 10-2, PageID.53).  On June 6, 2017, he applied for supplemental security

income.  (*Id.*).  In his disability report, he listed conditions which impacted his

ability to work, including memory loss, bipolar disorder, depression, and

headaches.  (ECF No. 10-6, PageID.312).  His application was denied on October

30, 2017.  (ECF No. 10-2, PageID.52).

   Following the denial, Plaintiff requested a hearing by an Administrative Law

Judge ("ALJ").  On March 7, 2018, Plaintiff appeared and testified at a hearing

before ALJ Patricia S. McKay.  That hearing was adjourned to allow Plaintiff to

undergo psychological testing.  On August 19, 2019, Plaintiff and a vocational

expert ("VE"), Michael E. Rosko, testified at the reconvened hearing.  (ECF No.

10-2, PageID.132-38).  On September 18, 2018, the ALJ issued an opinion which

determined that Plaintiff was not disabled within the meaning of the Social

Security Act.  (*Id.* at PageID.53-67).  Plaintiff later submitted a request for review

of the hearing decision.  On July 20, 2020, the Appeals Council denied Plaintiff's

request for review.  (*Id.* at PageID.39-44).  Thus, the ALJ's decision became the

Commissioner's final decision.

Plaintiff timely commenced the instant action on August 26, 2020.

**B.      The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the

sequential evaluation process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since June 6, 2017, the application date.  (ECF No. 10-

2, PageID.55).  At **Step 2**, the ALJ found that Plaintiff had the following severe

impairments: schizoaffective disorder, post-traumatic stress disorder, dysthymia,

history of opioid dependence, and history of closed head injury because of trauma

with chronic headaches.  (*Id.* at PageID.55).  At **Step 3**, the ALJ found that

Plaintiff did not have an impairment or combination of impairments that met or

medically equaled the severity of one of the listed impairments.  (*Id.* at PageID.55-

58).  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated

Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had

the RFC to perform a full range of work at all exertional levels but with the

following nonexertional limitations:

- Simple, routine, repetitive work with no more than
  occasional changes in work routine;

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant
can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. §§ 404.1545(a),
416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

- Occasional interaction with supervisors, coworkers, and the general public;
- Low stress work, which is work that is self-paced and not at a production rate and, where the job duties are not interdependent with those of co-workers.

(*Id.* at PageID.58-65).  At **Step 4**, the ALJ determined that Plaintiff had no past relevant work.  (*Id.* at PageID.65).  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were existing jobs in significant numbers within the national economy that Plaintiff could perform, such as janitor, housekeeper, packager, and assembler.  (*Id.* at PageID.66).  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since June 6, 2017, the date the application was filed.  (*Id.* at PageID.67).

##### C.    Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4)

can return to past relevant work; and (5) if not, whether he or she can perform

other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.[2]  The

Plaintiff has the burden of proof at steps one through four, but the burden shifts to

the Commissioner at step five to demonstrate that there is work available in the

national economy the claimant can perform.  *Walters v. Comm'r of Soc. Sec.*, 127

F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the

burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing

*Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

**D.     Standard of Review**

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

---

[2] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

    **E.**    **Analysis**

    Plaintiff's application for disability benefits is based on his mental

impairments.  The record reflects he received ongoing mental health treatment

throughout the relevant period.  The ALJ set forth a detailed summary of the

medical evidence.  (ECF No. 10-2, PageID.56-65).  Neither party objects to that

recitation.  The undersigned will not restate that summary in this report and

recommendation, but will discuss the evidence as necessary in the analysis below.

    Plaintiff makes two arguments on appeal to this Court.  He argues the ALJ,

despite finding a "marked impairment" in concentration, persistence, or pace

("CPP"), failed to account for the impairment in the RFC.  According to Plaintiff,

this requires remand because a marked impairment means he has "serious

limitations" in CPP, yet the ALJ did not discuss these limitations in the decision.

(ECF No. 13, PageID.1289-90).  The second argument relates to the ALJ's

assessment of Dr. Mitchell Solomon's March 23, 2019, consultative examining

psychological opinion.  Plaintiff argues the ALJ failed to resolve inconsistencies

between the opinion and the ALJ's decision.  For instance, Dr. Solomon found

Plaintiff only mildly to moderately limited in CPP, and the ALJ found Dr.

Solomon's opinion persuasive yet the ALJ found Plaintiff markedly limited in that

area.  Plaintiff also notes internal inconsistencies in Dr. Solomon's opinion which

the ALJ did not resolve.  While Dr. Solomon found only mild to moderate

limitation in CPP, he also noted Plaintiff had "significant deficit in concentration

and attention."  Plaintiff asserts this "significant deficit" more closely aligns with

the definition of "marked" impairment.  (*Id.* at PageID.1291-92).

The Commissioner asserts the RFC adequately accounts for Plaintiff's CPP

limitation.  The regulations provide examples of CPP, such as "Working at an

appropriate and consistent pace."  (ECF No. 16, PageID.1307).  According to the

Commissioner, the RFC closely tracks these examples, and thus adequately

accounts for a marked limitation in CPP.  For instance, the ALJ limited Plaintiff to

work that is self-paced and not at a production rate.  In addition to tracking the

examples of CPP, the ALJ's decision includes discussion of Plaintiff's normal

mental status examinations and observes that Plaintiff's symptoms are worse in

large crowds.  (*Id.* at PageID.1309-10).  As to Dr. Solomon's opinion, the

Commissioner maintains there is no error because the ALJ's decision is more

favorable to Plaintiff than the opinion.  Remand would be "useless" in this

circumstance.  The Commissioner contends the ALJ's finding of marked limitation

is consistent with Dr. Solomon's finding that Plaintiff could carry out simple

instructions.  (*Id.* at PageID.1311-13).

A claimant's RFC is defined as "the most an individual can still do after considering the effect of the physical and mental limitations that affect the ability to perform work-related tasks." *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 594 (6th Cir. 2005) (citing 20 C.F.R. § 404.1545). The ALJ, and not a physician, determines a claimant's RFC after reviewing all of the relevant evidence of record, both medical and non-medical. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). A severe impairment may or may not affect a claimant's functional capacity to do work, as one does not necessarily establish the other. *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (internal citation omitted).

At Step Three of the sequential analysis, the ALJ addressed the "paragraph B" criteria of Listings 12.02, 12.04, and 12.15. The B criteria are the same for all three listings. This paragraph of the listings provides the criteria representing four areas of functioning the ALJ assesses to evaluate how a claimant's mental disorders limit their functioning. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The area relevant to Plaintiff's appeal is to concentrate, persist, or maintain pace. This area refers to the ability to focus attention on work and stay on task as a sustained rate. *Id.* at § 12.00(E)(3). The ALJ found Plaintiff has "marked limitation" in this area. (ECF No. 10-2, PageID.57). A marked limitation indicates "functioning in this area independently, appropriately, effectively, and on a sustained basis is *seriously*

*limited.*"  20 C.F.R. § Pt. 404, Subpt. P, App. 1 (emphasis added).  To contrast this,

a moderate limitation indicates "fair" ability to function in the area and extreme

limitation means the claimant is unable to function in the area.  A marked

limitation falls between moderate and extreme limitation.  *Id.* at § 12.00(F)(2)(c-e).

The ALJ based her decision on Plaintiff's alleged difficulty concentrating

and completing tasks, that he has hallucinations, and that he has trouble around

crowds.  However, the ALJ also noted his symptoms are managed conservatively

with medication, mental status examinations revealed Plaintiff could perform

simple calculations, he could recall five digits forward and three backwards, he

scored "extremely low" in intelligence testing, could manage his personal care,

prepare simple meals, manage money, play cards, take the bus, and watch

television.  "For these reasons," the ALJ found marked limitation.  (ECF No. 10-2,

PageID.57).

Plaintiff presented for a consultative examination with Dr. Solomon, a

psychologist, during October 2017 and again in March 2019 for an updated

examination.  The ALJ found both opinions persuasive.  The former opinion

included that Plaintiff could engage in routine work-related activities at a sustained

pace.  (ECF No. 10-7, PageID.494).  Here, the second opinion is at issue.  When

Plaintiff presented to Dr. Solomon in March 2019, Dr. Solomon found he

"struggled with attention and concentration.  He often requested that questions be

repeated before he could provide an answer." (ECF No. 10-12, PageID.1016).  Dr.

Solomon concluded, in relevant part, that Plaintiff has "mild to moderate

limitations in concentration, persistence and pace." (*Id.* at PageID.1018).  In

another part of the opinion, Dr. Solomon opined Plaintiff had mild limitation in the

ability to carry out simple instructions but moderate limitation in carrying out

complex instructions.  He also opined Plaintiff "has significant deficits in attention

and concentration." (*Id.* at PageID.1020).

    In evaluating this opinion, the ALJ thoroughly reviewed Dr. Solomon's

findings, including that Plaintiff "struggled with concentration and often asked that

questions be repeated." (ECF No. 10-2, PageID.63).  The ALJ found the opinion

that Plaintiff had mild limitation in understanding and carrying out simple

instructions persuasive.  She determined the opinions are supported by the

objective evidence of normal mental status examinations and evidence reflecting

symptoms are stable with medication.  (*Id.* at PageID.64).

    No medical or psychological professional opined that Plaintiff had marked

limitation in CPP.  On the contrary, Dr. Solomon concluded he had only mild to

moderate limitation in CPP.  And the State agency reviewing psychologist, Dr.

Rea- Michalak, concluded Plaintiff had moderate limitations in the ability to

maintain attention and concentration for extended periods.  (ECF No. 10-3,

PageID.162).  It was the ALJ alone who found marked limitation.  Despite this

finding, the ALJ did not expressly address whether or how the marked limitation in CPP was accounted for in the RFC.

Plaintiff cites *Collins v. Comm'r of Soc. Sec.*, 179 F. Supp. 3d 767 (S.D. Ohio 2016), to support his position.  In *Collins*, the ALJ found the claimant markedly impaired in CPP.  In the mental RFC, much like the RFC here, the claimant was limited to "no more than occasional interaction with supervisors, coworkers, and the public; no more than simple, routine, repetitive tasks performed without production quotas."  *Id.* at 771.  The claimant argued the RFC did not account for his marked impairment in CPP.  Like this case, the claimant's psychiatrist and the State agency reviewing psychiatrist both found the claimant had only a moderate impairment in CPP, but the ALJ gave the claimant the "benefit of the doubt" finding a marked impairment in this area based largely on the claimant's subjective statements.  In evaluating residual functional capacity, the ALJ stated only "the limitation[ ] . . . for simple, repetitive tasks with no production quotas adequately account[s] for the claimant's marked impairment in concentration, persistence, and pace[.]"  *Id.* at 772.  The court found that analysis deficient because the ALJ did not explain how the evidence supported the limitation to simple, repetitive tasks without production quotas.

The Commissioner seeks to distinguish *Collins* by showing the ALJ here provided more mental limitations in the RFC and the ALJ explained her reasons

for those limitations.  The first point is unavailing—that the ALJ here provided more mental RFC limitations does not distinguish the cases on a meaningful level.

The second point is also unavailing.  It is true the ALJ explained the mental RFC limitations in her decision, but those explanations do not address concentration, persistence, or pace.  The ALJ explained her reasons for limiting Plaintiff to occasional interaction with supervisors, coworkers, and the general public, and performing low stress jobs that are self-paced and where job duties are not interdependent with those of coworkers.  She first acknowledged Plaintiff's allegations of difficulty remembering, completing tasks, concentrating, understanding, and the like.  Then, she noted symptoms were stable with medication and that Plaintiff had not required hospitalization for his impairments.[3]  Further, mental status examinations reflected average grooming, attitude within normal limits, and intact memory, but she noted his symptoms worsened in crowds.  "For these reasons," she provided the social interaction and pace limitations.  The social interaction limitation is unrelated to CPP.  The pace limitation also is not obviously related to CPP—limiting work to that which is self-paced does not necessarily account for a problem *maintaining* pace.  The self-paced work was meant to limit work to low-stress jobs.

---

[3] It does not appear Plaintiff took medication for concentration issues.

As for the limitation to performing simple, routine, repetitive work with no more than occasional changes in work routine, the ALJ relied on Plaintiff's low intellectual functioning, his ability to perform serial 7's and simple calculations, and his ability to manage his personal care, take public transportation, grocery shop, attend appointments, and manage money. "For these reasons," the ALJ found Plaintiff could perform simple, routine, repetitive work with no more than occasional changes in work routine. (ECF No. 10-2, PageID.65). These limitations are unrelated to CPP. The ALJ did not acknowledge CPP when giving reasons for the simple, routine work limitation. Thus, the undersigned cannot conclude this limitation accounts for marked impairment in CPP.

Though not on all fours, there is a rather large body of cases addressing the situation in which the ALJ, rather than a physician or psychologist, finds a moderate limitation in CPP. Those cases generally involve an ALJ failing to adequately include his or her own CPP limitation in the RFC assessment or the hypothetical to the vocational expert. *See Hicks v. Comm'r of Soc. Sec.*, 2011 WL 6000714 (E.D. Mich. Aug. 30, 2011); *Ervin v. Comm'r of Soc. Sec.*, 2017 WL 955129, at *8 (E.D. Mich. Mar. 13, 2017) ("Courts are more likely to order a sentence-four remand in cases where the ALJ made the finding of moderate deficiencies in concentration, persistence, or pace in the absence of a medical opinion that found similar moderate deficiencies and indicated that the plaintiff

was still capable of sustained work."); *Benton v. Comm'r of Soc. Sec.*, 511 F. Supp.

2d 842 (E.D. Mich. 2007); *Boley v. Astrue*, 2012 WL 680393, at *16 (E.D. Mich.

Feb. 10, 2012).

This line of cases bolsters the persuasiveness of *Collins* and underscores the

problem here. In *Collins* and here, the ALJ alone found the plaintiff markedly

impaired in CPP (more impaired than a moderate limitation). Yet neither ALJ

addressed how the mental RFC limitations account for that impairment. As

explained above, it is not at all apparent the limitations provided in the RFC here

account for a marked impairment in CPP. *See, e.g.*, *Green v. Comm'r of Soc. Sec.*,

No. 08–11398, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009) ("It is

difficult to reasonably accept 'moderate' meaning anything less than 20%–30% of

the time at work. Thus, 'moderate' concentration problems . . . need to be included

or accommodated in some suitable fashion in the hypothetical question at Step 5. . .

. Simply including the hypothetical of unskilled jobs with limited contact with co-

workers and the public is not sufficient."); *Edwards v. Barnhart*, 383 F. Supp. 2d

920, 930 (E.D. Mich. 2005) ("Plaintiff may be unable to meet quotas, stay alert, or

work at a consistent pace, even at a simple, unskilled, routine job."); *Cwik v.

Comm'r of Soc. Sec.*, 2012 WL 1033578, at *10 (E.D. Mich. Feb. 23, 2012)

("cases within this District that do not remand for the ALJ to include a moderate

concentration, persistence, or pace limitation were distinguishable [from those that

do remand] because a medical professional had made a specific finding that the claimant had moderate difficulties in concentration, persistence, or pace, but could still work on a sustained basis.").

The ALJ's decision leaves it unclear whether or how the ALJ accounted for marked limitations in CPP.  As a result, the undersigned recommends remand.

**F.      Conclusion**

For the foregoing reasons, the undersigned **RECOMMENDS** Plaintiff's Motion for Summary Judgment (ECF No. 13) be **GRANTED** to the extent that Plaintiff requests remand, that the Commissioner's Motion for Summary Judgment (ECF No. 16) be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be **REMANDED**.  On remand, the ALJ should adequately account for her determination that Plaintiff had "marked" difficulties in "concentration, persistence, or pace" in the RFC and obtain additional VE testimony if necessary.

**II.      PROCEDURE ON OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 20, 2022                      s/Curtis Ivy, Jr.
                                            Curtis Ivy, Jr.
                                            United States Magistrate Judge